# United States District Court

## Western District of Virginia

### Harrisonburg, Virginia

_____
)          Civil No.: 5:14cv00022
**KRIESTA L. WATSON,**                  )
)
*Plaintiff,*                  )          **REPORT AND**
)          **RECCOMENDATION**
)
**SHENANDOAH UNIVERSITY,** *et als*.,   )
)          By:  Hon. James G. Welsh
*Defendants*                  )          U.S. Magistrate Judge
)
_____ )

Plaintiff, Kriesta Watson, commenced this action on May 28, 2014 by filing a *pro se* motion for leave to proceed *in forma pauperis* (dkt. #1); attached to it was a copy of her proposed complaint.  Her motion was denied by order dated May 30, 2014; she paid her filing fee on June 13, 2014, and her complaint was filed.  In the style of her complaint the plaintiff named Shenandoah University and several co-workers as defendants, and in the body of her complaint she named several others individuals as defendants (dkt. #3).  By order entered September 29, 2014 (dkt. #9) this case is before the undersigned magistrate judge on referral for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## A.     PROCEDURAL BACKGROUND

In addition to utilizing Shenandoah University's grievance procedure to contest her October 25, 2010 termination, the plaintiff separately filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging race-based and gender-based discrimination and

retaliation (dkt. #44-1, pp 1, 4-7). Therein, she also sought to assert a claim of "on-going harassment" related to "benefits" under the Family Medical Leave Act ("FMLA")[1] (dkt. #3, pp 3, 5; dkt. #41-1, pp 4, 7-9). In January 2011 her termination was upheld by a grievance committee (dkt. #3, pp 5-6). Three years later, on February 28, 2014 her Title VII charge was dismissed, and she was issued a right-to-sue letter by the EEOC (dkt. #3-1). This cause of action ensues

As originally filed, the plaintiff's complaint (dkt. #3) named her employer (Shenandoah University), Tracy Fitzsimmons (Univ. President), Byron Grigsby (Univ. Vice-Pres.), Marie Landes (HR Director), Calvin Allen (Assoc. Vice-Pres.), Karen Abraham (Assoc. professor), and Steven Humphries (Assoc. professor) as defendants (dkt.#3, pp 1-3, 4).[2] Seeking reinstatement, back pay, accrued benefits and general damages, she alleged that she had been wrongfully terminated by Shenandoah University pursuant to unlawful practices, including: violation of her "rights under the Civil rights Act of 1964;" violation of her "constitutional rights for due process…, equal protection;" and a failure "to follow the Family Medical and Leave Act regarding [her] June 20, 2009] car accident" (dkt. #3, pp 4, 6-10).

Without waiver of any defects in service of process, on October 16, 2014 pursuant to Rules 12(b)(1), (b)(4), (b)(5) and (b)(6), F.R.Civ.P., Shenandoah University and ten individual

---

[1]  "[T]he Court is not aware of any requirement that a plaintiff must file an EEOC Charge prior to instituting suit under the FMLA." *Reed v. Md. Dep't of Human Res.,* 2013 U.S. Dist. LEXIS 17761, *42  (DMd. Feb. 7, 2013); *see also* dkt. #41-1, p 10).

[2]  Other school employees not named in the complaint but receiving civil summonses (dkt. #7) included Teresa Masciello (Assessment Coordinator), Alan McKay (Dean, Pharm.), Clarresa Morton (Vice-Pres.) and Pamela Lamborne (Assoc. Dir, Planning) (dkt. #13).

defendants filed their joint motion asserting multiple bases to dismiss on (dkt. #13). [3]    A Roseboro Notice [4]   was sent on October 21, 2014 (dkt. #16).

Claiming the defendants' motion was "without merit" and a "tactical maneuver (motivated by egregious and capricious intent) to circumvent" her constitutional rights (dkt. #18, p 1), three days later the plaintiff filed written motions seeking dismissal of the defendants' Rule 12(b) motion and entry of a default judgment in her favor (dkt. #18, #19). [5]   Pursuant to a separate motion, the plaintiff also sought leave to add a number of additional defendants (dkt. #20). Over objection, on December 15, 2014 Dr. Watson was granted leave to file an amended complaint, and it was thereafter timely filed on January 14, 2015 (dkt. #28).

In her amended complaint Dr. Watson claims her administrative-level employment was wrongfully terminated in violation of various federal civil rights and employment protections, and in her *ad damnum* she seeks equitable relief, as well as compensatory and punitive damages (dkt. #28, pp 33-34).

## B.    PLAINTIFF'S ASSERTION OF JURISDICTION

Read liberally, in a somewhat rambling and prolix (36 page) Amended Complaint (dkt. #28) the plaintiff seeks to invoke the court's subject matter jurisdiction by asserting a variety of

---

[3]   Along with the defendants' subsequently filed memorandum in support of their Rule 12(b) motion (dkt. #23), they filed an attachment that included an affidavit and copies of the summonses related to their threshold claims of defective process and service of process.

[4]   '*Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) holds that a *pro se* plaintiff is entitled to fair notice from the district court of the requirements of the summary judgment rule, fairly to apprise her of what is required as a  reasonable safeguard, when confronted with the possibility of summary disposition of her case.

[5]   These motions, as well as the plaintiff's motion seeking leave to file an amended complaint, were opposed by the defendants (dkt. #21, #22 and #23).

discrimination and discrimination-related claims. Under 42 U.S.C. § 1983 ("§ 1983") she alleges violation of her constitutional due process rights. Under 42 U.S.C. § 12101 *et seq*., she alleges discrimination on the basis of disability in violation of the Americans with Disabilities Act ("ADA"). Under Title VII of the Civil rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-2(a)(1) she alleges discrimination on the basis of race and gender. Under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 she claims interference and retaliation. Under 29 U.S.C. § 218c and 29 C.F.R. § 541.602 she claims violation of wage and hour protections afforded her, and under the court's supplemental jurisdiction (28 U.S.C. § 1367) she asserts a state law intentional tort claim.

At the same time she also filed an amended list of defendants (dkt. #29). Combining both lists together, the plaintiff's list of defendants includes: Shenandoah University, its "Board of Trustees," and a number of school officials, including Tracy Fitzsimmons (Univ. President), Byron Grigsby (Academic Affairs Vice-Pres.), Marie Landes (HR Director), Calvin Allen (A&S Dean), Teresa Masiello (Asses. Coordinator), Alan McKay (Dean, Pharmacy), Pamala Lamborne (Assoc. Dir., Planning), and Claressa Morton (Vice-Pres.).

Responding to the amended complaint and amended list of defendants, the defendants renewed their motion to dismiss (dkt. #33, #37) pursuant to Rules 12(b)(1), (b)(4), (b)(5) and (b)(6), and the clerk's office mailed a second Roseboro Notice to the plaintiff on January 28, 2015 (dkt. #34). Following regular notice, the views of the parties were heard on March 10, 2014 (dkt. #39). Based upon Dr. Watson's representation that she had not received the defendants' memorandum (dkt. #37), by oral order (dkt. #40) the plaintiff was granted leave to submit such response as she may wish within twenty-one days.

4

Apparently based on her erroneous belief that the Roseboro Notice deadline applied to the defendants, Dr. Watson contends in response that the defendants' memorandum (dkt. #37) was not timely filed and that she is, therefore, entitled to summary judgment in her favor. Thus, in a motion to "strike[]," she asks the court to disallow the defendants' memorandum on the basis of its purported late filing and her conclusory assertion that it was used "to hinder" her timely response (dkt. #42). In a separate motion "pursuant to Rule 12(b)(1)," she asks the court "to disregard" the defendants' responsive pleadings, because of the same purported late filing and because of what she contends to be the unpersuasive legal basis for the asserted defenses (dkt. #43). Based also upon a full review of the entire record, including the sum-total of her factual allegations, Dr. Watson's motions "to strike" (dkt. #42) and "to disregard" (dkt. #43) are plainly without merit and both SHOULD BE DENIED.

Seeking to avoid the impact of a number of potentially applicable statutes of limitation or repose, the plaintiff's third motion asks the court "to employ" equitable tolling and estoppel because of her "severe" health-related issues, delays in EEOC responses and the EEOC's "failure to provide full discovery" (dkt. #44).[6]

Viewing the case as "ripe for adjudication," the defendants elected not to file a reply (dkt. #45). Dr. Watson, however, without leave of court chose to file yet another motion (dkt. #46), this time invoking Rules 56(d)(3) and 56(e)(3). This filing was interpreted by the defendants to be a motion for summary judgment in the plaintiff's favor based on what she contends is a lack of "facts essential to justify [the defendants] opposition" to her motions in contrast to the

---

[6] *See* § E. 9. *infra.*

5

"adequate evidential support" in her pleadings.  Therefore, "out of an abundance of caution," the defendants noted their objection (dkt. #47), and this response prompted yet another motion to dismiss (dkt. #48) by the plaintiff.  Based on a similarly full review of the entire record, including the sum total of her factual allegations, Dr. Watson's "motion for enforcement" (dkt. #46) and "motion to dismiss" (dkt. #48) are also patently without merit and SHOULD BE DENIED.

## C.   NATURE OF PLAINTIFF'S CLAIMS [7]

### 1.   Plaintiff's General Allegations (dkt, #28, pp 1-12, 34-35)

Until she was "fired" on October 25, 2010, at all relevant times prior thereto Kriesta Watson was a salaried executive-level administrator at Shenandoah University ("Shenandoah"). In a letter from the school's president dated October 25, 2010 (dkt. #28-1, p 1) the plaintiff's employment was terminated "due to [her] inability to improve her job performance according to [the school's] policies" including "specifically" sections 9.1 (*regular work schedule requirement*), 9.2 (*obligation to follow recognized departmental procedures*), and 9.4 (*duty of professional conduct in the workplace*).[8]

---

[7] For purposes of considering the defendants' Rule 12(b) motion to dismiss (dkt. #33), Dr. Watson's allegations of fact set forth in her Amended Complaint (dkt. #28) are accepted as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[8] In their entirety, Sections 9.1, 9.2 and 9.4 of Shenandoah University's Staff Handbook read as follows:
   **9.1 Work Schedule.**  Each employee is to conform to the regular work schedule requirements for his/her department.  Efficient use of the workday is required.  Regular attendance, punctuality, and conformance to scheduled lunch periods are required.  Employees are expected to be informed about the university.
   **9.2 Departmental Procedures.**  Employees are to follow recognized departmental procedures and instructions in performing their jobs. All deviations from established policy must be approved by the appropriate supervisor.

6

Based on what she describes as an unfair and inappropriate grievance process, including race and gender bias and the use of what she further contends were false statements, her termination was upheld by a school grievance panel on January 26, 2011 ostensibly for "non-attendance and unauthorized absence[s] … on October 18, 19 and 20," 2010 (dkt. #28-1, pp 3-4). In addition to her race and gender discrimination claims, the plaintiff asserts that she was also subjected to a number of unlawful employment practices, including "ADA and disability discrimination," Fourteenth Amendment violations, due process denials, deprivation of her "right to pursue [her] calling or occupation," public policy violations and [violations of her] ability to sue; all of which she alleges resulted in the violation of her Title VII rights, violation her "constitutional rights to due process and equal protection," and her disparagement both before the grievance panel and the EEOC (*see* dkt. #3, pp 3, 8-9; #28-1, pp 6-10).

Beginning in 2009, when she was "the only person of color on [a] team" composed mostly of persons who had "never worked closely with a person of color," Dr. Watson alleges she heard that her superior, Byron Grigsby, was "encouraging" staff members to file complaints against her (dkt. #28, pp 5-7). At the time, she alleges she was working in an environment where individuals of color were negatively perceived by the staff and where issues of "cultural sensitivity and white privilege" were not appropriately addressed by the institution (dkt. #28, pp 6-7).

---

**9.4 Professionalism.** Shenandoah University expects that all employees are able to conduct themselves professionally at all times in the workplace. This includes demonstrating a cheerful manner, a willingness to learn, an intelligent interest in the students, a feeling of pride about their work and a spirit of friendliness toward others. Professionalism is also displayed by respecting co-workers and all constituencies of the university.

Dkt. #28-1, p 2.

In this environment, she claims she received a poor and unsympathetic evaluation in July 2010 and a termination notice near the end of October 2010. During this period, the plaintiff additionally contends the actions and inactions of her superior ("a white male") were one-sided, uncommunicative, non-empathetic, hostile, unprofessional, unfair, irregular, arbitrary, verbally abusive, aggressive, unresponsive, unaccommodating, and (based on what she had been told by a fellow employee) racially motivated (dkt. #28 pp 2-4, 6). She further alleges her superior "encouraged disharmony," failed to provide "professional guidance and direction regarding racial sensitivity," and acted with "white privilege in the workplace." Based on statements attributed to others, in Dr. Watson's opinion Shenandoah is "a racist institution, given its status as a predominantly white institution" (dkt. #28, p 5).

Before the university's grievance panel, it appears from the plaintiff's amended complaint, that she contested directly the basis for her termination and also raised issues of race discrimination, gender discrimination, her perceived lack of due process, and the school's failure to accommodate her "disability" (*see* dkt. #28, pp 9-100). Nevertheless, the plaintiff's termination was upheld, and by letter dated January 26, 2011 the grievance committee notified Dr. Watson that her termination had been formally upheld on the basis of "unauthorized absence[s]" on October 18-20, 2010. This result, the plaintiff dismissively points-out, was made by a committee in which all of the participants "were white" and in which her concerns were "never validated nor legitimized" (dkt. #28, p 9).

The plaintiff also alleges the defendants unlawfully and inappropriately tainted the EEOC proceedings. *Inter alia*, she contends Shenandoah submitted "falsified information" to the EEOC "regarding her allegations of race and gender discrimination" in order "to prejudice" and

8

"obstruct[]" its investigation (dkt. #3, p 8). As her basis for this contention, she cites the fact that Shenandoah never submitted what she described as "critical documents" pertaining to her grievance hearing and "did not respond" to "documents" she submitted, including information concerning the perceived unequal disciplinary treatment of a "white" employee and the appointment of an "underqualified white woman" as her replacement (dkt. #3, pp 8, 11-12).

### 2. **Race and Gender Discrimination Claims** (dkt. #28, pp 12-16)

Based on statements attributed to two senior faculty members to the effect that her direct superior treated her differently, she alleges "it was clear" to her that her treatment (particularly as it pertained to keeping the office apprised of her whereabouts throughout the day) was not the same as the treatment of "male white professionals." As a second basis for her claim of race and gender discrimination, the plaintiff also points to, what she describes as, an "unprofessional, abusive" and "racially motivated" conversation with her superior on October 20, 2010 that led directly to her termination "under false pretenses."

### 3. **ADA and Disability Discrimination Claim** (dkt. #28, pp 14-20)

In this section of her complaint, the plaintiff claims she became entitled to "workplace accommodations," when she returned to work in August 2009 following a June 2009 motor vehicle accident in which she believes she sustained ADA qualifying impairments, including a concussion ("traumatic brain injury"), facial muscle weakness ("Bell's palsy"), and "nerve injuries within her back and spine (including sciatica)." On account of these "disabilities" she alleges that she was entitled to (but did not request) an accommodation in her "work schedule for medical appointments in accordance with [the] ADA [and the] FMLA." Without alleging any request for accommodation or request for FMLA leave on her part, the plaintiff alleges causes of

9

action under both statutes because she was not offered this workplace accommodation and because her superior "did not advocate for her medical challenges" (dkt. #28, p 14-15).

**4.**      **4.**   **Violation of 14th Amend. Rights & Lack of Due Process** (dkt. #28, pp 15-17)

**5.**      It is the plaintiff's contention in this section of her amended complaint that her employment was "illegal[ly] terminated for unauthorized absences without being given the opportunity to take further corrective action," make a "formal response" or have an opportunity to appeal the grievance outcome. As alleged, this action (or lack thereof) by Shenandoah and the individual defendants resulted in the denial of both the plaintiff's procedural and substantive (property) rights to due process.

     **5.**   **42 U.S.C. § 1983 and Labor Law Claims** (dkt. #28, pp 22-26)

On the basis of what she contends was "falsif[ied]" evidence of unauthorized absences on October 18, 19 and 20, 2010, [9] the plaintiff claims in this section of her complaint a violation of her "liberty rights" and impairment of her property interest in her employment and professional standing as consequences of her "wrongful termination." These facts, she pleads, provide a basis for the court's jurisdiction under §1983 and under the Fourteenth Amendment's Due process clause. Based on her status as a salary-based employee, the plaintiff also alleges to have sustained termination-related pay loss in violation of the Fair Labor Standards Act.

     **6.**    **Violations of Public Policy and Ability to Sue Claims** (dkt. #28, pp 26-27)

_____

[9] In her complaint the plaintiff states that she "was working those three days and did not miss <u>three consecutive days from work</u>" (dkt. #28, p 26, emphasis in original). In a nutshell, the plaintiff concedes that the school's handbook provides for termination on the basis of missing three consecutive days from work; however, she was terminated for "unauthorized absence from the University" on 10/18-20/2010, and that change constitutes both a falsified basis for her termination and is contrary to her documented off-campus work activity on each of those days (dkt. #28, pp 24 and 28).

10

Citing *VanBuren v. Grubb,* 284 Va. 584,592, 733 S.E.2d 919, 923 (2012), in this section of her amended complaint Dr. Watson alleges a common law tort claim for wrongful discharge in violation of Virginia's established public policy against workplace discrimination. In addition, this section of her complaint also appears to allege a pendant state law claims for unlawful disparagement.

**7.  Relief Sought** (dkt. #28, pp 33-34)

Seeking compensatory and "equitable" relief to be "made whole," the plaintiff's *ad damnum* prays for reinstatement with full benefits, back pay, front pay "to compensate" for a discrimination-related pay differential, legal fees and expenses, "maximum" allowable punitive damages, and injunctive relief "to correct" discriminatory practices, require Shenandoah officials undergo sensitivity and diversity training, and require the removal of "bias[ed] performance evaluations" from her personnel file.

**D.  LEGAL STANDARD**

**Rule 12(b)(1)** "provides that a party may assert by motion a defense of lack of subject matter jurisdiction," *Bland v. Fairfax County*, 2011 U.S. Dist. LEXIS 70204,*3;  85 Fed.R.Evid.Serv.(Callaghan) 923, (EDVa. June 29, 2011), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action" Rule 12(h)(3). Therefore, subject matter jurisdiction requirements can never be forfeited or waived, *United States v. Cotton*, 535 U.S. 625, 630 (2002), and a defendant can challenge the subject matter jurisdiction of a court by either a facial attack a challenge to the sufficiency of the pleading itself) or a factual attack (a challenge to the factual existence of subject matter jurisdiction). *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  If it is contended that a complaint fails

to allege facts upon which subject matter jurisdiction can be based, then "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  On the other hand, if it is contended that the jurisdictional allegations of the complaint were not true, "the court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Id.*

In the context of employment discrimination and retaliation, although this court has subject matter jurisdiction under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), for the court to exercise such jurisdiction the plaintiff must exhaust her administrative remedies, *Kobrai v. Alexander,* 521 Fed. Appx. 117 (4th Cir. 2013) (citing *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir.2009)), and a failure to exhaust administrative remedies, deprives the court of subject matter jurisdiction. *Jones*, 551 F.3d at 301.

**Rules 12(b)(4) and 12(b)(5)** "allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process."  *Whitsell v. United States*, 1999 U.S. App. LEXIS 28445, *4 (10th Cir. Nov.1, 1999).  Since "[e]ffectuation of service is a precondition to suit," *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir.1998), the plaintiff has the burden of establishing the validity of service, *Fed-Deposit Ins. Corp. v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir.1992). When this burden is not met, the court may dismiss for failure to serve properly. *Lasky v. Lansford*, 76 Fed. Appx. 240, 240-241 (10th Cir.2003), and in doing so, the court "enjoys broad discretion." *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986) (*per curiam*).

12

"The purpose of a **Rule 12(b)(6)** motion is to test the sufficiency of a complaint.  It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (citations and internal quotation marks omitted); *accord Edwards v. City of Goldsboro*, 178 F.3d 231, 243-244 (4th Cir. 1999).  A court reviewing a complaint on a Rule 12(b)(6) motion must accept well-pleaded allegations as true, and must construe all allegations in favor of the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  The court, however, need not accept as true legal conclusions disguised as factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679-681 (2009), and a pleading that offers only a "formulaic recitation of the elements of a cause of action will not do" *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Likewise, a complaint that tenders mere "naked assertion[s]" devoid of "further factual enhancement" will not do. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557.

"Typically, **a defense based on the statute of limitations** must be raised by the defendant through an affirmative defense, *see* F.R.Civ.P. 8(c), and the burden of establishing the affirmative defense rests on the defendant."  *Washington v. Veritiss, LLC*, 2015 U.S. Dist. LEXIS 26371,*6 (EDVa. Mar. 4, 2015) (citing *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007).  This defense, however,  may be reached on a motion to dismiss under Rule 12(b)(6), "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman*, 494 F.3d at 464 (citations and internal quotation marks omitted).

## E.    ANALYSIS

Responding to the plaintiff's original complaint (dkt #3) and her amended complaint (dkt #28), Shenandoah University, its Board of Trustees, and several of its administrators and faculty

13

(referenced collectively herein as the "defendants") have challenged the court's subject matter jurisdiction, the effectiveness of process and service of process, and the sufficiency of the allegations and legal theories underlying the plaintiff's several claims. They have of moved for dismissal pursuant to Rules 12(b)(1), 129b(4), 12(b)(5) and 12(b)(6), and these challenges will be discussed with reference to the plaintiff's relevant causes of action.

### 1.    Individual Defendants, Rule 12(b)(1) Challenge

Asserting various claims arising as a result of her allegedly unlawful termination on October 25, 2010 and the subsequent affirmation of her termination by a grievance panel on January 26, 2011, Dr. Watson identifies Shenandoah University and a number of individual administrative and faculty members as defendants.

Among her allegations are Americans with Disabilities Act [10] ("ADA") claims resulting from a workplace "failure to accommodate" and workplace "discrimination." Each of these claims is reliant on the sum total of the plaintiff's factual assertions.

As the defendants argue (*see* dkt. #37, pp 6-7), to the extent Dr. Watson's amended complaint can be arguably read to allege an ADA violation by any individual defendant, the claim fails as a matter of law. By seeking to impose liability on any individual in his or her official capacity, when the employer is the real party in interest, the effort is redundant and un-

---

[10]  The ADA "'is designed to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. §§ 12101(b)(1) and 12101(b)(4). It forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-517 (2004).

necessary, given that the plaintiff has already sued the employer directly in this case. *See e.g.,*
*Munoz v. Baltimore Cnty., Md.*, 2012 U.S. Dist. LEXIS 103597,*32-36 (DMd. July 25, 2012)
(since the plaintiff filed ADA claims against the county, her claims against the individual county
employees in their official capacities "are redundant"). Therefore, the plaintiff's ADA claims
against any individual defendant in his or her official capacity SHOULD BE DISMISSED
WITH PREJUDICE.

### 2. Service of Process, Rules 12(b)(4) and (5) Challenge

In her first effort at service of process, the plaintiff listed Shenandoah University, its
president (Tracey Fitzsimmons) and a former vice-president (Byron Grigsby) as defendants;
separately she also identified Calvin Allen, Karen Abraham, Steven Humphries as defendants
(dkt. #3, pp 1-2). She, thereafter, had nine individually addressed envelopes (each containing
both a copy of the original complaint and a summons identifying the individual addressee as the
"defendant" and listing his or her address as the school's "Office of the President") delivered by
an unidentified individual to Jeanne Hoffman, an administrative employee in the school's
academic affairs office (dkt. #23-1, pp 1-11; #23, p 6). None was addressed to Shenandoah; one
was addressed to a former employee (Byron Grigsby), and four were addressed to school
employees (Tracy Fitzsimmons, Calvin Allen, Karen Abraham and Steven Humphries) involved
one way or another in the plaintiff's termination (*Id.*). The other four individuals (Teresa
Masielio, Allen McKay, Pamela Lamborne and Claessa Morton) are neither named nor
referenced in the complaint.

15

The defendants' having moved pursuant to Rules 12(b)(4) and 12(b)(5) to dismiss the complaint, "the plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4.'' *Elkins v. Broome*, 213 F.R.D. 273, 275 (MDNC. 2003). Absent valid service of process, the court does not acquire personal jurisdiction over a defendant, and as to that defendant the action must be dismissed, *Shaver v. Cooleemee Volunteer Fire Dept.*, 2008 U.S. Dist. LEXIS 28921, (MDNC. Apr. 7, 2008).

Apparently recognizing that her initial effort was defective, on September 25, 2014 the plaintiff for a second time attempted to effect service of process through Jeanne Hoffman (dkt. #13). This time she utilized the services of a private process server, and she had nine summonses "served" on Ms. Hoffman, one directed to each of the same nine individuals (*Id.*).

In connection with her initial efforts at service of process, the plaintiff plainly failed to meet the requirements of either Rule 4(a) or 4(e). In connection with her second of these efforts, she has offered no evidence or suggestion that Jeanne Hoffman was an individual authorized to accept service of process on behalf of Shenandoah or on behalf of any individual identified as a defendant. In connection with her second effort at service of process, once again she failed to comply with Rule 4(a), and she also failed to comply either with the individual service requirements of Rule 4(e) or the corporation service requirements of Rule 4(h). As the defendants argue, process and service of process are, therefore, both insufficient within the meaning of Rules 12(b)(4) and 12(b)(5) and insufficient to establish jurisdiction.

Case 5:14-cv-00022-EKD-JCH   Document 49   Filed 05/28/15   Page 16 of 39   Pageid#: 409

In her amended pleadings filed on January 14, 2015, she named Shenandoah University, its "Board of Trustees," Tracy Fitzsimmons, Marie Landes, Calvin Allen and Byron Grigsby as defendants (dkt. #28; #29). Since that time, despite a third attempt, she has failed properly to effectuate service of process. On January 14, 2015, using the services of a process server, the plaintiff had five summons delivered to "Shenandoah University c/o Officer Baylor (Public Savety Officer)" and five summons delivered "c/o PG Klockenbrink, " one each to "BOT of Shenandoah University," Tracey Fitzsimmons, Marie Landes, Calvin Allen, Bryon (sp?) Grigsby. Having made no request under Rule 4(d)(1) for a waiver of service and having failed make a reasonable effort to meet the delineated service requirements under either Rule 4(h) or Rule 4(e), service of process against all defendants is untimely.

"While the case law indicates a liberal construction of the provisions of Rule 4, *see, e.g.*, *Karlson v. Rabinowitz,* 318 F.2d 666, 668 (4th Cir. 1963), the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored. *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)." *Quann v. Whitegate-Edgewater*, 112 F.R.D. 649 652-653 (DMd. 1996) (internal quotation marks omitted)

Now that more than the one hundred twenty (120) days allowed by Rule 4(m) have passed since she filed her amended pleadings and since she has made no reasonable or diligent effort to effect service on the defendants, or any of them, "the court must dismiss" this action as to each identified defendant. *See Jones v. Newby*, 2013 U.S. Dist. LEXIS 34231, *2-3 (EDVa. Mar. 12, 2013) (citations omitted). Even if it is assumed *arguendo* that Dr. Watson could reasonably suggest or demonstrate the requisite good cause required to extend this time period, the overall facts and circumstances of this case compel a finding that an extension of time would

be futile. Therefore, all identified defendants (corporate and individual) are entitled to entry of an ORDER OF DISMISSAL WITH PREJUDICE.

### 3. ADA, Rule 12(b)(6) Challenge

In order to establish a prima facie case of failure to accommodate under the ADA, a plaintiff must show "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001). Accordingly, the first ADA-related question this court must consider is whether the plaintiff has a "disability" as defined by the ADA. The short answer is that she has failed to make this essential demonstration.

A disability under the ADA can be alleged as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the instant case, the plaintiff is proceeding under subsection (A) and claims that the residual subjective effects of a motor vehicle accident substantially limited one or more of her major life activities. "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I); *Crumel v. Hampton Univ.*, 2005 U.S. Dist. LEXIS 32628,*15 (EDVa. Dec. 8, 2005)

In her pleadings, the plaintiff claims that since 2009 she has suffered from the post-traumatic effects of a concussion and various nerve-related subjective symptoms (dkt. #28, pp

18

14-19); however, there is nothing in the pleadings or record to suggest these conditions substantially limited a major life activity. There is nothing to suggest any request on her part for an ADA accommodation; there is nothing to suggest her identification of any reasonable accommodation, and there is nothing to suggest Shenandoah ever regarded her as having such a limitation.[11]  *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 (4th Cir. 2004) (plaintiff "not 'disabled' under the ADA because (1) she did not suffer an impairment that substantially limited her in one or more major life activities, and (2) no evidence suggests that [the employer] regarded her as such"); *Lewis v. Md. Sheriff's Youth Ranch*, 2012 U.S. Dist. LEXIS 101773,*22 (DMd. Jul. 20, 2012) (the "burden of identifying an accommodation that would allow a qualified individual to perform the job rests with the plaintiff") (quoting *Lamb v. Qualex, Inc*., 33 F. Appx 49, 59 (4th Cir. 2002); *Rhoads v. F.D.I.C*., 257 F.3d 373, 387 (4th Cir. 2001) ("[C]laims under the ADA for unlawful termination and failure to make a reasonable accommodation both require a showing that [the plaintiff] was 'disabled' within the meaning of the ADA.");

Given these multiple fundamental deficiencies in Dr. Watson's ADA claim, further amendment would be futile.[12]  Moreover, her claim is time-barred [13] because of her failure to file

---

[11] "To establish a prima facie wrongful discharge claim under the ADA, a plaintiff must show that (1) she was a qualified individual with a disability;' (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination. In an ADA hostile work environment claim, a plaintiff establishes a prima facie case if she demonstrates that (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer."  *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273, n. 10) (citations omitted),

[12] "[D]ismissal with prejudice is proper if there is no set of facts the plaintiff could present to support [her] claim."  *Weigel v. Maryland*, 950 F. Supp.2d 811, 825-826 (DMd. 2013).

this ADA discrimination charge with the EEOC. Under the ADA, she had at most 300 days from the alleged discriminatory event to make this mandatory administrative filing in order not to be time-barred on that claim. *See* 42 U.S.C.A. § 2000e-5(e)(1).[14] Accordingly, the ADA claims against Shenandoah should be DISMISSED WITH PREJUDICE

### 4.     FMLA, [15] Rule 12(b)(6) Challenge

Responding to the plaintiff's claims of employer interference with her FMLA rights and employer retaliation, the defendants argue that both claims are time-barred by the applicable statute of limitations. Although a statute of limitations plea as the bar to a cause of action constitutes an affirmative defense, it may be raised by motion pursuant to Rule 12(b)(6), "if the time bar is apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) (citation omitted).

Claims brought under the FMLA are generally subject to a two-year statute of limitations period. 29 U.S.C. § 2617(c)(1); *Avent v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS

---

[13]  Given the plaintiff's termination on October 25, 2010, that date is the latest date that her ADA claim could have accrued and the mandatory filing time began to run.

[14]  Although a plaintiff must normally bring suit within 180 days of an alleged discriminatory act, where the plaintiff files a claim with a state or local agency authorized to adjudicate the claim, the plaintiff is granted an extension of 300 days from the original discriminatory act with which to file the claim with the EEOC under the provisions of 42 U.S.C. § 2000e-5(e)(1).

[15]  "Congress enacted the FMLA 'to balance the demands of the workplace with the needs of families.' 29 U.S.C. § 2601(b)(1). Under the FMLA, eligible employees can take up to twelve weeks of unpaid leave from work during any one-year period 'to care for the spouse … of the employee, if such spouse … has a serious health condition.' 29 U.S.C. § 2612(a)(1)(C). Upon the employee's return to work, the employee has the right to be restored to the original, or an equivalent, position. 29 U.S.C. §§ 2614(a)(1)(A)-(B)." *Battle v. City of Alexandria*, 2015 U.S. Dist. LEXIS 49024, *5 (EDVa. Apr 14, 2015).

116010, *11-12 (EDVa. Aug. 16, 2012); however, this period is extended to three years for willful[16] violations, 29 U.S.C. § 2617(c)(2).

Assuming for purposes of discussion that the plaintiff's FMLA claims are subject to the longer three-year statute of limitations, they are nevertheless time-barred. As the plaintiff's complaint makes clear, the adverse employment actions about which she complains occurred no later than the date she was terminated, October 25, 2010; therefore, Dr. Watson had at most until October 25, 2013 to bring her FMLA claim. Since her FMLA claim was not cognizably asserted until the filing of the instant case in May 2014 (dkt. #3), Dr. Watson's FMLA claims are time-barred.

Furthermore, even it is assumed *arguendo* that her FMLA claims of interference and retaliation are somehow not time-barred, the plaintiff has still failed to present any basis in fact to show such violations. To establish unlawful interference with an entitlement to FMLA benefits, the plaintiff must prove, among other things, that she gave her employer adequate notice of her intention to take FMLA leave and that she was denied FMLA benefits to which she was entitled. *See Rodriguez v. Smithfield Packing Co., Inc*., 545 F. Supp. 2d 508, 516 (D Md. 2008) (citing *Edgar v. JAC Prods., Inc*., 443 F.3d 501, 507 (6th Cir. 2006); 29 U.S.C. § 2615(a)(1). Her allegation that she made her superior aware by email of her automobile accident in June 2009 (dkt. #3, p 9) is patently inadequate notice of her intention to take FMLA leave, and it is equally inadequate to suggest a denial of FMLA benefits to which she was entitled.

---

[16] "A violation is willful 'where an employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA].'" *Avent v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 116010, *12 (EDVa. Aug. 16, 2012); *Settle v. S.W. Rodgers, Co., Inc*., 998 F. Supp. 657, 663 (EDVa. 1998) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 130, (1988) (quotation marks omitted)), aff'd, 182 F.3d 909 (4th Cir. 1999) (unpublished).

Moreover, Dr. Watson's pleadings neither allege nor suggest retaliatory intent under the FMLA on the part of Shenandoah. *See Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 588 (DMd. 2010) ("retaliation claim requires proof of retaliatory intent"). Based both on the plaintiff's incurably defective FMLA-related pleadings and the fact that this claim is time-barred, it should be DISMISSED WITH PREJUDICE.

### 5. 14th Amendment/Due Process, Rule 12(b)(6) Challenge

Dr. Watson contends in this cause of action that she was subjected to a retaliatory discharge, racial discrimination and the denial of due process under the Fourteenth Amendment,[17] all stemming from the termination of her employment and its subsequent affirmation by a grievance panel (dkt. #28, pp 19-21). In considering the defendants' motion to dismiss, the court accepts as true the facts alleged in the complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011); nevertheless, Dr. Watson's due process claims fail as a matter of law because neither Shenandoah nor any individual defendant is a state actor. *See Muncy v. Centex Home Equity Co., L.L.C.*, 2014 U.S. Dist. LEXIS, *12 (WDVa. Jul. 9, 2014). Moreover, these claims fail because they are time-barred[18] and this court is without the necessary subject matter jurisdiction.

---

[17] The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Constitution, Amend. XIV, § 1.

[18] "There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied. For personal injury claims, Virginia has a two-year statute of limitations. Va. Code § 8.01-243(A). Although the limitations period for § 1983 actions is borrowed from state law, the question of when a cause of action accrues under § 1983 remains one of federal law. Such an action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal [her] cause of action." *Morgan v. Town of Mineral*, 2012 U.S. Dist. LEXIS 62439, *16 (WDVa. May 4, 2012) (internal quotation marks an citations omitted).

The due process deprivations about which she complains accrued, according to her pleadings, no later than the date of the grievance committee's adverse employment action on January 26, 2011 (*see* dkt, #29, p 19); therefore, her Due Process claims became time barred under the two-year statute of limitations in January 2013, more than sixteen months before she filed suit. Thus, because her pleading is fatally defective on its face and because it was filed too late, the plaintiff's claims under the Fourteenth Amendment's Due Process clause should be DISMISSED WITH PREJUDICE.

### 6. Labor Law, Rule 12 (b)(6) Challenge

The plaintiff next seeks to rely on certain federal wage and hour protections which she contends are causally related to her "wrongful termination." Citing 29 C.F.R. § 541.602(a), the crux of this claim is that as a salary-based employee[19] of Shenandoah she cannot be discharged or discriminated-against with respect to her compensation or other privileges of employment, and her absence-based termination violated the employee protections afforded under 29 U.S.C. § 218c [20] (*see* dkt. #28, pp 27-28).

This contention, however, badly misconstrues the Fair Labor Standards Act's anti-retaliation provision. In two clauses this section of the U.S. Code affords retaliation protection in two discreet situations: (1) those who report or complain about unlawful employment practices and (2) those who participate, testify or give information in inquiries or other proceedings.

---

[19] 29 CFR § 541.602

[20] Section 218c is part of the Fair Labor Standards Act ("FLSA")." *Richter v. Design at Work, LLC,* 2014 U.S. Dist. LEXIS 91154, *7 (EDNY. July 3, 2014).

*Sexton v. Panel Processing Inc.*, 754 F.3d 332, 335 (6th Cir. 2014). Neither of these discreet circumstances is either pleaded or suggested in the plaintiff's pleadings; therefore, this claim also fails to state a cause of action upon which relief may be granted.

This claim is also time-barred.[21] Even if it is assumed for purposes of discussion that the plaintiff's complaint minimally alleges a cognizable FLSA claim and attendant *willful* wrongdoing on the part of the employer, the plaintiff's time to take action to seek redress expired at most three years after the grievance committee affirmed her termination on January 19, 2011. Since this FLSA claim was not asserted until she filed the instant case in May 2014 (dkt. #3), this claim is also subject to DISMISSAL WITH PREJUDICE on both statute of limitations and fatally defective pleading grounds.

### 7. Race & Gender Discrimination, Rule 12(b)(6) Challenge

Distilled to its essence, this is Dr. Watson's fundamental contention in this litigation. She believes her termination in October 2010 was the result of race and gender-based discrimination and a hostile work environment. Her belief that she is the victim of discrimination, however, is not enough to state a claim. "To prove discrimination on this basis, [Dr. Watson] bears the burden of establishing either direct evidence of discrimination or a *prima facie* case of discrimination." *Lewis v. Univ. of Md.*, 2012 U.S. Dist. LEXIS 149748, *14 (DMd. Oct. 18, 2012). Her pleadings fail even to suggest a factual basis underlying her discrimination claim.

---

[21]   The statute of limitations for claims under the FLSA is two years, unless a plaintiff can prove that the defendants acted willfully. See 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

24

In her pleadings, she neither identifies nor suggests any direct evidence of discrimination, such as race or gender-based discriminatory comments by a supervisor or that discriminatory animus motivated the employer's adverse employment decision. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Consequently, her amended complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Kincaid v. Anderson*, 2015 U.S. Dist. LEXIS 59128,*5 (WDVa. May 6, 2015) (quoting *Twombly*, 550 U.S. at 555). She need not, however, plead the elements of a *prima* facie case.[22] Instead, she must satisfy Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief ," and for Title VII claims that means the pleader must allege facts showing "that she was fired because of her membership in a protected class." *Gholson v. Benham*, 2015 U.S. Dist. LEXIS 65193,*13 (EDVa. May 19, 2015) (citing *Swierkiewicz*, 534 U.S. at 511); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

In contrast, the plaintiff's amended complaint is a litany of stereotypical labels and naked assertions devoid of facts sufficient to claim that the reason she was terminated was because of her race and gender. *See Iqbal*, 556 U.S. at 678-79. It is wholly lacking in the underlying factual allegations that would make the plaintiff's legal conclusions plausible, and it falls far short of the

---

[22]  Both the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), and the recent Fourth Circuit decision in *McCleary-Evans v. Md. DOT*, 780 F.3d 582 (2015) "make clear" a plaintiff  need not plead a prima facie case of discrimination under the *McDonnell Douglas* test to survive a Rule 12(b)(6) motion to dismiss. *Gholson v. Benham*, 2015 U.S. Dist. LEXIS 65193,*12  (EDVa. May 19, 2015).

25

minimum meeting the pleading requirements of Rule 8(a)(2). [23]  Although it is a "machine gun

spray of allegations," it is without any facts supporting a federal question, and this court lacks the

requisite subject-matter jurisdiction.  *See Young-Smith v. Holt*, 575 Fed. Appx. 680, 681 (7th Cir.

2014).  Therefore, the plaintiff's race or gender-based claims of discrimination, purposeful or

otherwise, SHOULD BE DISMISSED WITH PREJUDICE.

### 8.    Pendant State Law Claims, Rule 12(b)(6) Challenge

In addition to her multiple federal law claims, Dr. Watson also seeks to assert a pendant

state law claims predicated on "public policy" violations and on statements she contends were

"disparage[ing]" and "false[]. (dkt. #26, pp 23-24, 26-27).  Although these claims arise under

Virginia law, they are without question intimately related to the plaintiff's federal-law claims;

they are within this court's original jurisdiction, and they "form a part of the same case or

controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance

of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining

to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*,

484 U.S. 343, 350 n. 7 (1988).   The exercise of supplemental jurisdiction is, however,

---

[23]   "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.' While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (citing *Twombly*, 550 U.S. at 556)).

discretionary, and "the trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citation omitted);  *Parker v. Austin*, 2015 U.S. Dist. LEXIS 55123, *26 (WDVa. Apr. 28, 2015) ("supplemental jurisdiction is discretionary").

Considering that a common basic pattern of circumstances exists in both the state-law and federal-law contexts, that the same basic issue of a limitations-bar exits in both contexts, and that the typical issues of judicial economy, convenience and fairness to the defendants exist in this case, it makes little sense for this court to decline to exercise jurisdiction over the plaintiff's state-law claims.  *See e.g., Nelson v. Green*, 965 F. Supp.2d 732, 751 (WDVa. 2014); *Evans v. Rich*, 2015 U.S. Dist. LEXIS 3109,*4 (EDNC. Jan. 12, 2015) ("in the interest of judicial economy and in fairness to defendants … the Court exercises its discretion to retain jurisdiction over plaintiff's state law claims").   For these reasons, the court SHOULD RETAIN JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS.

Read liberally, Dr. Watson's amended complaint appears to attempt to allege state-law tort claims for wrongful retaliatory discharge and for defamation.  On review, each insufficiently pleads a recognizable cause, and each is time-barred

Although Virginia recognizes an action sounding in tort for wrongful retaliatory discharge from work, it exists as a narrow exception to Virginia's strict application of the to the employment at-will rule. *Bowman v. Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985); *Altizer v. Town of Cedar Bluff,* 2015 U.S. Dist. LEXIS 50618,*21 (WDVa. Apr. 17, 2015).   It is "limited to discharges which violate public policy, that is, the policy underlying existing

27

statutory law designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Id.* (citing *Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915, 918, 4 Va. Law Rep. 1309 (1987); *see also McCarthy v. Tex. Instruments, Inc.*, 999 F. Supp. 823, 829 (EDVa. 1998) ("A *Bowman* claim must find root in a state statute.").

While virtually every statute "reflect[s] public policy to some extent,… termination of an employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge." *City of Virginia Beach v. Harris,* 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000). The Virginia Supreme Court continues to consider this to be a "narrow" exception and to hold that the "termination of an employee in violation of the policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge." *Id.* In only four circumstances has the Virginia Supreme Court found a public policy sufficient to allow a common law action for wrongful discharge under the public policy exception to go forward. *See Rowan v. Tractor Supply Co.*, 263 Va. 209, 213, 559 S.E.2d 709 (2002). One is the public policy entitling shareholders to vote their shares free of duress or intimidation reflected in the right conferred on the shareholder/employee by the statute. *Bank of Keysville,* 229 Va. at 540. The second is when the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy. *Bailey v. Scott-Gallaher, Inc.*, 253 Va. 121, 480 S.E.2d 502 (1997). The third is where the termination was based on the employee's refusal to engage in a criminal act, *Mitchem v. Counts*, 259 Va. 179, 190, 523 S.E.2d 246, 252 (2000), and the fourth is where the termination was based on the

employee's refusal to give-in to the unlawful demands of a supervisor or manager, albeit not her actual employer. *VanBuren v. Grubb*, 284 Va. 584, 733 S.E.2d 919 (2012).

Given the narrow circumstances and limited number of recognized public policy exceptions to Virginia's at-will employment doctrine, "[a]s a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F. Supp.2d 431, 450 (EDVa. 2002).

In the present case, the plaintiff's seeks to meet this "public policy" pleading requirements by claiming her termination was an act of sexual harassment and hence a violation of an important employee-related public policy; thus, she further argues, her termination on the basis of attendance-related "false allegations" was also an act of deceit in violation of public policies against dishonesty and fraud.

Accepting as true all facts properly pled, all reasonable inferences arising from those facts and applying the narrow exception to employment-at-will rule, the plaintiff has failed to state a cause of action in tort against Shenandoah or any of the individual defendants for retaliatory discharge in violation of public policy. There is not a single fact alleged in Dr. Watson's amended complaint to suggest that her termination was the consequence of an act of retaliation; there is not a single fact alleged to suggest fraudulent intent on the part of the defendants, or any of them, and any suggestion of reliance on the public policy reflected in the Virginia Human Rights Act ("VHRA") is misplaced. By its self-limiting provision, Va. Code Ann (1950, as amended) § 2.1-725(D), it states in relevant part:

29

> "Causes of action based upon the public policies reflected in
> this chapter shall be exclusively limited to those actions,
> procedures and remedies, if any, afforded by applicable federal
> or state civil rights statutes or local ordinances."

*Mitchem v. Counts*, 259 Va. 179, 185, 523 S.E.2d 246 (2000); *Wilson v. Continental Cablevision of Richmond, Inc.*, 39 Va. Cir. 506, 512; 1996 Va. Cir. LEXIS 205 (Cir. Ct. Richmond. Aug. 1, 1996) (held that insofar as the plaintiffs were asserting a common law tort action under the VHRA, the defendant's demurrer was sustained).

Simply put, the plaintiff's pendant claim of wrongful termination is neither based on a cognizable statutory right nor a corresponding public policy of the type that would support an exception to the employment-at-will doctrine and thereby allow a common law action for wrongful termination.

Her defamation claim is equally deficient. To be actionable, the disparaging statement upon which the plaintiff bases her claim must be both false and defamatory. Although such causes of action have their basis in Virginia common law, they are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and article I § 12 of the Virginia Constitution. These provisions "protect the right of the people to teach, preach, write, or speak any such opinion, however ill-founded, without inhibition by actions for libel and slander." *Tharpe v. Saunders*, 285 Va. 476, 481, 737 S.E.2d 890 (2013).

The gravamen of Dr. Watson's defamation claim is that she was "falsely" accused of being absent from work for the period between October 18 and October 20, 2010. At the same time, by including a copy of Shenandoah's formal response to the EEOC (dkt. #28-1, pp 6-10) as part of her amended complaint, she in effect acknowledges the nature of the school's defense to

her disparagement claim. In its "Confidential Position Statement," Shenandoah outlined the reasons Dr. Watson was required "to check-in with [her supervisor's] office each morning to update [him] on the three things she was working-on" and the fact that she failed to do so (dkt. #28-1, pp 7-8).[24]

The threshold defamation-related question, therefore, is whether the statement about which the plaintiff complains is capable of a defamatory meaning and thus "a matter for the trial judge to determine as a matter of law." *Yeagle v. Collegiate Times,* 255 Va. 293, 296, 497 S.E.2d 136 (1997). Although the plaintiff correctly notes that the allegedly defamatory statement could prejudice her in her career, it can nevertheless be an expression of opinion and not actionable.

The contested statement neither suggests nor imputes to the plaintiff the commission of a crime involving moral turpitude. *See Lewis v. Kei*, 281 Va. 715, 727, 708 S.E.2d 884 (2011) (a false accusation of a criminal act is generally a sufficient to establish a defamation cause for reputational injury). It contains no insulting words. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) (insulting words are those "which by their very utterance inflict injury or tend to incite an immediate breach of the peace"). In the context in which it was uttered it cannot be objectively characterized as true or false, and that appears to suggest it is expression of opinion. In other words, her superior was of the opinion that Dr. Watson's employment was terminable on the basis of her failure to report to his office for three straight days as instructed. *See Owens v. DRS Auto. Fantomworks, Inc*., 87 Va. Cir. 30, 2013 Va. Cir. LEXIS 157, *6 (Cir.Ct.Norfolk.

---

[24] Although the plaintiff's amended complaint contains no allegation or suggestion that she notified her superior as required, she contends this allegation is demonstrably false, because she worked on October 18 and 19 "with staff" off campus for "more than 4 hours" each day "conducting a presentation on behalf of the university," and on October 20 she was present on campus all day during which time she "sat-in [an] all-day Board meeting …and worked with assigned staff on [r]esearch [a]ssignments (dkt. #28, p 28).

Jun. 10, 2013) ("A key distinguishing factor between fact or opinion is whether the statement can be objectively characterized as true or false, [and it] … is also considered an opinion if it is relative in nature and can be considered dependent on the speaker's viewpoint.").

Additionally, both of these pendant state-law claims are subject to a one-year limitation period established in Va. Code Ann. § 8.01-248.(1950, as amended), and the plaintiff's rights of action, if any, for both wrongful termination and for defamation accrued no later than January 26, 2011. This date of the grievance committee decision is the most recent date an injury, no matter how slight, could have been sustained. It is the most recent date any applicable statute of limitations could have accrued and the prescribed limitation period began to run. *See* Va. Code Ann. § 8.01-230 (1950, as amended); *Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.2d 257 (1969), And on that same date one-year later both claims became time-barred. *See Purcell v. Tidewater Constr. Corp,* 250 Va. 93, 96, 458 S.E.2d 291 (1995) (a "suit for wrongful termination is not a suit for a positive, physical or mental hurt;…[and it] is subject to the one-year limitation period" in Code § 8.01-248; *Jordan v. Shands*, 255 Va. 492, 498 n.7, 500 S.E.2d 215 (1998) ("Effective July 1, 1995, a cause of action for defamation has been governed by a one-year period of limitation prescribed by Code § 8.01-247.1."). Therefore, both pendant state-law claims SHOULD BE DISMISSED WITH PREJUDICE.

### 9. Plaintiff's Motion Seeking Equitable Remedies

In an apparent effort to avoid the preclusive effect of the defendants' multiple statute of limitation defenses, the plaintiff argues the court should determine her claims not to be barred by application of the doctrines of equitable tolling and equitable estoppel.[25] (dkt. #44).

Generally equitable tolling "applies when some outside force prevents the employee from filing her claim or she took good-faith but ineffective steps to file her claim within the statutory period." *Gholson v. Benham*, 2015 U.S. Dist. LEXIS 65193.*10 (EDVa. May 15, 2015). Therefore, a litigant seeking equitable tolling "bears the burden of establishing two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in h[er] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Thus, the doctrine does not apply in situations "where the litigant misunderstood the law or failed to exercise due diligence in preserving [her] legal rights." *Irwin*, 498 U.S. at 96; *Jones v. Cartledge*, 2013 U.S. Dist. LEXIS 178867, *16 (DSC. Nov. 25, 2013) (finding that a misunderstanding of the law does not support equitable tolling). The plaintiff's actions and inactions fall squarely within this latter category.

---

[25] "'Equitable estoppel' precludes a defendant, because of his own inequitable conduct -- such as promising not to raise the statute of limitations defense -- from invoking the statute of limitations. *Currier v. Radio Free Europe/Radio Liberty*, 159 F.3d 1363, 1367 (DCCir. 1998; *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450-51 (7thth Cir. 1990). The doctrine of 'equitable tolling,' on the other hand, applies most commonly when the plaintiff 'despite all due diligence … is unable to obtain vital information bearing on the existence of his claim.' *Currier*, 159 F.3d at 1367. We have previously pointed out that the two doctrines, although functionally similar, 'have distinct criteria' -- the former revolving around the conduct of the defendant and the latter around the circumstances of the plaintiff. *Id*. There is a difference in effect as well: Equitable estoppel takes the statute of limitations out of play for as long as is necessary to prevent the defendant from benefitting from his misconduct, whilst equitable tolling -- as a method for adjusting the rights of two 'innocent parties' -- merely ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a 'reasonable time' in which to file suit. *Cada*, 920 F.2d at 452. See also *Phillips v. Heine*, 299 U.S. App. D.C. 359, 984 F.2d 489, 492 (DC Cir. 1993) ('The purposes of the doctrine [of equitable tolling] are fully achieved if the court extends the time for filing by a reasonable period after the tolling circumstance is mended')". *Chung v. United States DOJ*, 333 F.3d 273, 278-279 (DCCir. 2003).

Nothing in Dr. Watson's pleadings or motion suggest she was misled by some patently inadequate notice. There is no suggestion that she was unable to obtain vital information bearing on the existence of her claim despite all due diligence. There is no suggestion that she was somehow prevented by the EEOC or by some other entity or person from recognizing and diligently pursuing her multiple non-title VII claims. "[E]quitable tolling is available only in 'those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *United States v. Soso* 364 F.3d 507, 512 (4th Cir, 2015) (quoting *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*)). By this standard, the doctrine is simply inapposite in the instant case.

As a separate doctrine, equitable estoppel, on the other hand, precludes a defendant from invoking the statute of limitations, because of his own inequitable conduct. Under this doctrine, a litigant seeking equitable estoppel bears the burden of establishing six elements: "(1) concealment or misrepresentation of a material fact; (2) that the misrepresentation was made with knowledge of the fact; (3) that the other party was ignorant of the truth; (4) that the representation was made with the intention that the other party rely on it; and (5) that the other party was induced to act on it; and (6) that the party was harmed." *Whittaker v. Nationwide Mut. Fire Ins. Co*., 115 F. Supp. 2d 612, 619 (EDVa. 1999) (citing *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 221 Va. 81, 86, 266 S.E.2d 887 (1980) ("Fraudulent concealment must consist of affirmative acts of misrepresentation, mere silence being insufficient, and fraud which will relieve the bar of the statute must be of that character which involves moral turpitude)).

34

Neither the plaintiff's pleadings nor her motion demonstrate any conduct that would render the defendants' assertion of their statute of limitation rights contrary to equity under this principle. At its core, the doctrine of "[e]quitable estoppel applies where, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline." *English v. Pabst Brewing Co*., 828 F.2d 1047, 1049 (4th Cir. 1987) (citations omitted).

Reading Dr. Watson's pleadings and equity motion (dkt. #44) in the light most favorable to her under the motion to dismiss standard, no defendant misled her into missing any filing deadline. None concealed or misrepresented any material fact in order to induce the plaintiff to miss a deadline. None engaged in any other affirmative act of misconduct that prevented the plaintiff from filing her various claims on time, and none engaged in any attempt to mislead that resulted in the plaintiff neglecting to file a timely claim. Thus, the plaintiff's equitable estoppel argument also fails as a matter of law.

In passing it merits noting that the allegations in the plaintiff's motion are based on her contention that her failure to file suit was due to delays by the EEOC, to "critical and severe" medical issues, and to Shenandoah's "failure to provide full discovery" to the EEOC (dkt. #44, p 2). None is an adequate basis upon which to apply the doctrine of equitable estoppel. These facts and circumstances suggest no wrongfully deceit by any defendant; they suggest no concealment of the existence of a cause of action by any defendant, and they suggest no attempt to mislead the plaintiff. *See Lawson v. Burlington Industries*, 683 F.2d 862, 864 (4th Cir. 1982). Whether the EEOC did or did not make a timely response to the plaintiff's race and gender-based discrimination complaint, whether Shenandoah did or did not make a "full," timely response to

35

the EEOC investigation of her discrimination complaint and whether or not she was being treated for health-related issues, are all irrelevant .  Therefore the plaintiff's motion seeking equitable tolling and equitable estoppel do not apply and this motion SHOULD BE DENIED.

## F.    PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facts presented by the parties and all reasonable inferences have been considered in the light most favorable to the plaintiff;

2. Shenandoah University is a private educational institution, and no time herein relevant did it act either as a joint participant with any state actor or did it act "under color of state law;"

3. To the extent each individual defendant has been sued in his or her official capacity as an administrator or other employee of Shenandoah University, each is an un-necessary party;

4. No entity or individual identified by the plaintiff as a defendant at anyplace in her pleadings has received minimally adequate process or service of process;

5. All facts necessary to the affirmative defenses based on an applicable statute of limitations or repose clearly appear on the face of the amended complaint;

6. The plaintiff has stated no plausible ADA-based claim;

7. Assuming *arguendo* a cognizable ADA claim has been adequately pleaded, it is time-barred;

8. The plaintiff has stated no plausible FMLA-based claim;

9. Assuming *arguendo* a cognizable FMLA claim has been adequately pleaded, it is time-barred;

10. The plaintiff has stated no plausible Fourteenth Amendment Due Process claim;

36

**11.** Assuming *arguendo* a cognizable Due Process claim has been adequately pleaded, it is time-barred;

**12.** The plaintiff has stated no plausible FLSA or other labor law-based claim;

**13.** Assuming *arguendo* a cognizable FLSA or other labor-law-based claim has been adequately pleaded, it is time-barred;

**14.** The amended complaint fails to meet the minimum meeting the pleading requirements of Rule 8(a)(2);

**15.** The plaintiff has stated no plausible claim of race-based discrimination;

**16.** The plaintiff has stated no plausible claim of gender-based discrimination;

**17.** All of Plaintiff's claims involve events that occurred on or before January 26, 2011;

**18.** In the exercise of judicial discretion, the court should retain jurisdiction over the plaintiff's pendant state law claims;

**19.** Plaintiff filed suit on May 28, 2014;

**20.** The plaintiff has failed to state a cognizable state-law cause of action for wrongful retaliatory discharge;

**21.** The words upon which the plaintiff bases her disparagement claim is an expression of opinion and not actionable;

**22.** The plaintiff has failed to state a cognizable state-law cause of action for defamation;

**23.** To the extent, if any, the plaintiff has stated a cognizable claim of wrongful retaliatory discharge, this cause of action is time-barred;

**24.** To the extent, if any, the plaintiff has stated a cognizable claim of defamation, this cause of action is time-barred;

**25.** The plaintiff's motion "to strike[]" defendants' brief (dkt. #42) is without merit;

**26.** The plaintiff's motion "to dismiss" defendants' responses to Plaintiff's amended complaint and amended defendants (dkt. #43) is without merit;

**27.** The plaintiff's motion "for enforcement," (summary judgment) (dkt. #46) is without merit;

**28.** The plaintiff's motion seeking invocation of equitable remedies (dkt. #44) is without merit; and

**29.** The dismissal of all claims renders any other pending motions (dkt. #18, #19) of the plaintiff are moot.

### G.    INSTRUCTION  TO CKERK

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to the plaintiff and to all counsel of record.

### H.    NOTICE TO THE PARTIES

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

**DATED:** This 28th day of May 2015.

s/ *James G. Welsh*

United States Magistrate Judge

Case 5:14-cv-00022-EKD-JCH   Document 49   Filed 05/28/15   Page 38 of 39   Pageid#: 431

39