IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KRIESTA L. WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:14-cv-00022 |
| | ) | |
| SHENANDOAH UNIVERSITY, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Kriesta Watson, proceeding pro se, has brought this action against her former employer, Shenandoah University. She has also named as defendants its Board of Trustees and a number of its current and former employees. In her amended complaint, she asserts various causes of action, all of which relate to her employment and her October 2010 termination, which was affirmed by a grievance panel on January 26, 2011. Her amended complaint is not a model of clarity, but it appears to assert claims of disability discrimination, presumably in violation of the Americans with Disabilities Act (ADA), race and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964 (Title VII); and a claim of retaliation under Title VII. She also alleges claims of interference and retaliation under the Family Medical Leave Act (FMLA), federal wage and hour violations, and state-law claims of defamation and wrongful discharge in violation of public policy. Referencing 42 U.S.C. § 1983, the amended complaint also asserts that her constitutional due process rights were violated. (Dkt. No. 28, Amended Complaint.)

The matter was referred to United States Magistrate Judge James G. Welsh, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition as to a number of pending motions, including defendants' motions to dismiss the complaint and

amended complaint. (Dkt. Nos. 9, 13, 33.) After briefing and oral argument, the magistrate judge filed a report and recommendation on May 28, 2015, recommending that four motions filed by Watson (Dkt. Nos. 42, 43, 44, 46) be denied. (*See* Dkt. No. 49, Report at 5–6, 37–38.)[1] As to defendants' motions to dismiss, he recommended that the motions be granted, and that Watson's amended complaint be dismissed in its entirety. Some of his more specific recommendations were that:

1. All defendants be dismissed with prejudice because of Watson's failure to properly and timely serve them.

2. Watson's claim under the ADA, 42 U.S.C. § 12101 *et seq.*, be dismissed with prejudice for two reasons under Fed. R. Civ. P. 12(b)(6): First, for failure to state a claim because she has not alleged: (a) a "disability" as defined by the ADA; (b) that she requested an accommodation; (c) what a reasonable accommodation might be; or (d) that the University ever regarded her as having a disability. Second, she failed to file an ADA discrimination charge with the EEOC and the time for doing so has passed.

3. Watson's claims under the FMLA, 29 U.S.C. §§ 2601–2654, be dismissed with prejudice because they are barred by the applicable statute of limitations and because she has failed to allege sufficient facts to show a FMLA violation or retaliation.

4. Watson's § 1983 claims that her Fourteenth Amendment due process rights were violated be dismissed, because they are time-barred and because neither the

---

[1] The report also recommends the dismissal as moot of any other pending motions filed by Watson and references specifically Docket Numbers 18 and 19. (Dkt. No. 49 at 38.) The first of these is simply a response to defendants' motion to dismiss; the second is a motion for default judgment that has already been denied. (*See* Dkt. No. 27.) Thus, no action remains to be taken on either of those filings.

2

University nor any individual defendant is a state actor.

5. Watson's claims that defendants violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, be dismissed, because they are time-barred and because she has failed to allege facts to bring her claims within the narrow anti-retaliation provision of the FLSA.[2]

6. Watson's claims of race discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, be dismissed because they do not contain sufficient facts to survive a motion to dismiss under the standards of *Iqbal* and *Twombly*;[3] her complaint simply alleges in conclusory fashion that she was discriminated against and retaliated against, but she does not identify or suggest any specific facts in support of her claims.

7. Watson's state law claims of defamation and wrongful discharge in violation of public policy be dismissed, because they are time-barred and because they fail to plead a recognizable cause.

(*See* Dkt. No. 49 at 36–38 (listing all report's findings, conclusions, and recommendations).)

---

[2] The court is unclear as to whether Watson is, in fact, asserting claims that defendants violated any provision of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219. To be sure, the introduction of her amended complaint states that the lawsuit alleges "violation of public policy Federal Statutes" and cites 29 U.S.C. § 218c and 29 C.F.R. § 541.602. In the body of her complaint, however, it appears that she is simply referring to these provisions as support for her claim that she was improperly terminated. That is, she argues that, although the University claims the reason her termination was upheld was because she was absent from work on October 18, 19, and 20, she was in fact paid for those days, which (in her view) is evidence that she was in fact present. (Dkt. No. 28 at 27–30.) Of course, the mere fact that an employee is paid on a salary basis and is not docked pay for missing a given day during a pay period does not mean that she is free to disregard an employer's attendance rules.

In any event, the defendants (and the magistrate judge) interpreted the pro se complaint as alleging a claim that the University actually violated wage and hour protections under 29 U.S.C. § 218c. Construing the complaint broadly, the court will also assume she intended to assert a separate claim of an FLSA violation. Even so, the claim is subject to dismissal because it is time-barred, as discussed herein.

[3] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2009).

3

Watson filed objections to the report (Dkt. No. 50), and defendants filed a brief response in which they simply urge this court to adopt the report in its entirety. (Dkt. No. 51). The court has reviewed the report, Watson's objections, and defendants' response. For the reasons set forth herein, the court will adopt the report in part and reject it in part, and will grant in part and deny in part defendants' motions to dismiss. The court will dismiss all claims against all individual defendants with prejudice, and will dismiss all claims against the University and its Board of Trustees with prejudice, with the exception of Watson's claim of race discrimination under Title VII. It will also deny the four pending motions filed by Watson.

## I. BACKGROUND

The court adopts the recitation of facts and procedural background as set forth in the report. (Dkt. No. 49 at 3–11.) Because the court is ruling on a motion to dismiss, it accepts as true the well-pleaded facts set forth in the amended complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

## II. DISCUSSION

### A. Standard of review

This court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). An objection is properly noted, however, only if it is stated "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). Many of Watson's objections are "[g]eneral objections that merely reiterate arguments presented to the magistrate judge" and thus "lack the specificity required under Rule 72." *See Moon v. BWX Techs., Inc.*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), *aff'd*, 498 F. App'x 268 (4th Cir. 2012). As to such general objections—which this court treats as non-

4

objections, *see id.*—the court need only satisfy itself that no clear error exists in the report. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

To the extent Watson has objected more specifically, the court reviews the magistrate judge's report de novo, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

**B.      The individual defendants should be dismissed because they were not properly served.**

The report first recommends the dismissal of all defendants because Watson has failed to effect service properly on any of them and the 120 days allowed by Federal Rule of Civil Procedure 4(m) for service have long since passed. Her original complaint was filed more than a year ago, and her amended complaint was filed on January 14, 2015. (*See* Dkt. No. 50 at 15–18 (describing plaintiff's attempts at service and explaining why they were insufficient).)

As to the University and the Board of Trustees, the court will reject the report's recommendation that dismissal is proper due to insufficient service. The record before the court reflects that counsel for the University acknowledged, at a December 15, 2014 conference, that counsel was "making a general appearance for the University" and that "service was waived and effective as to the University in this matter." (Dkt. No. 27 at 1.) After that point, then, Watson was permitted to provide a copy of her amended complaint and other filings to counsel for the University and was not required to re-attempt service under Rule 4. Notably, moreover, defendants have not raised improper service as a grounds for dismissal as to either the University or the Board of Trustees. (Dkt. No. 37 at 7 (defendants arguing that six individuals (all of whom

5

Case 5:14-cv-00022-EKD-JCH   Document 52   Filed 09/24/15   Page 5 of 19   Pageid#: 466

were named in the initial complaint, but not the amended complaint) are subject to dismissal).)[4]
Furthermore, as to the Board of Trustees, the University concedes that "a university and its board have been held to be one and the same . . . ." (Dkt. No. 37 at 8 n. 6.) Accordingly, the court will not dismiss the University or the Board of Trustees on grounds of improper service.

As to the remaining individual defendants, Watson provides nothing that shows service was properly made or waived. The copies of affidavits she has provided are consistent with the report's explanation of the facts concerning service, and simply reflect that some of the defendants had their summonses hand-delivered to counsel. (Dkt. No. 50-1 at 1–5 (affidavits of service).) As explained in the report, Watson's attempts at service do not satisfy the rule governing service and thus the court agrees that Watson has not properly served the individual defendants.

If Watson could show good cause for her failure to serve timely any defendant, the court would be required to grant an extension of the 120-day period for an "appropriate period." Fed R. Civ. P. 4(m). Likewise, the court has discretion under Federal Rule of Civil Procedure 6(b) to grant an extension of time for service if Watson could show excusable neglect. *See* Fed. R. Cir. P. 6(b). The court concludes, however, that Watson has neither alleged nor shown any facts to satisfy either good cause or excusable neglect.

---

[4] In their motion to dismiss, defendants argue that proper service was not accomplished on six individuals who were referenced in the original complaint, but not named as defendants in the amended complaint: Karen Abraham, Stephen Humphries, Teresa Masiello, Allen McKay, Pamela Lamborne, and Claressa Morton. Defendants do not argue that Tracey Fitzsimmons, Marie Landes, Byron Grigsby, or Calvin Allen (all named in the amended complaint) were improperly served, although as the magistrate judge notes, the record does not reflect that proper service was made on these individuals. In any event, the only claims the court is not dismissing on limitations grounds are Title VII claims, and it is settled law that individual supervisors or employees cannot be held liable under Title VII. *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (individual employees are not "employers" for purposes of Title VII and are not subject to individual liability for claims of discrimination); *Lissau v. S. Food Serv.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (same). Accordingly, even assuming that all of these defendants were properly served (or service was waived as to some or all of them), none of them are subject to liability on the remaining claims.

6

Watson has had ample opportunity to effect proper service. She received defendants' motion, she obtained one extension of time to serve her original complaint, and she now has had the benefit of the report and recommendation explaining that service has not been properly effected. She has nonetheless failed to take any steps to remedy the noted deficiencies. To be sure, she has made some attempts to effectuate service, but they do not satisfy the requirements for proper service. *See Hansan v. Fairfax Cnty. Sch. Bd.*, 405 F. App'x 793, 794 (4th Cir. 2010) ("[p]ro se status . . . is insufficient to establish good cause, even where the pro se plaintiff mistakenly believes that service was made properly."); *id.* (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")); *Tann v. Fisher*, 276 F.R.D. 190, 193 (D. Md. 2011), *aff'd,* 458 F. App'x 268 (4th Cir.) (collecting authority). Thus, although Watson believes defendants were properly served as a result of service "c/o" counsel (Dkt. No. 50 at 3), that is not necessarily the case. *See Davies v. Jobs & Adverts Online, GmbH*, 94 F. Supp. 2d 719, 722 (E.D. Va. 2000) ("[T]he mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service") (quoting *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997)).)

In this case, Watson has not attempted to serve any of the individual defendants personally, or at their places of residence (at least none that Watson has conveyed to the court). Likewise, Watson has served copies of the complaint and summons on an administrative employee and a public safety officer employed by the University, and on defendants' counsel, but none of these people are authorized agents of the individual defendants for the purpose of receiving service of process. This case is therefore distinguishable from others where courts have found good cause existed to grant an extension. *See, e.g.*, *Elkins v. Broome*, 213 F.R.D.

7

273, 275–76 (D. Md. 2003) (declining to dismiss pro se complaint for failure to effect service and giving an extra 20 days to accomplish service where a private process server was hired but unable to obtain the home address of the defendant police officer, tried several times to personally serve him at work, and ultimately delivered a copy of the summons to the duty officer, who said he could accept service and deliver papers to the department's attorney); *Tann*, 276 F.R.D. at 193 (discussing *Geller v. Newell,* 602 F.Supp. 501, 502 (S.D.N.Y.1984), in which the court granted a 14-day extension where plaintiff, upon learning his attempts at service were ineffective, "made extensive inquires and finally located defendant," and then promptly made arrangements for personal service on defendant, thereby showing good cause).

For all of these reasons, the court adopts the report's recommendation that the individual defendants be dismissed. The court will dismiss them with prejudice because, even if they had been properly served, all claims against them are subject to dismissal on other grounds, as well.[5]

**C.      Most of Watson's claims are time-barred.**

Even if Watson had properly served the complaint, nearly all of her claims are barred by their respective statutes of limitations. As noted in the report and alleged in the amended complaint, Watson's claims arise out of her termination from employment, which occurred on October 25, 2010. She then invoked the University's grievance procedure and her termination was upheld in a final grievance decision on January 26, 2011. Watson did not file suit until May 28, 2014—more than three years later.

The report thus concluded that all of her claims (with the exception of her Title VII claims) are barred by their applicable statutes of limitations. (Dkt. No. 49 at 13, 19–21, 22 n.18,

---

[5] *See supra* note 4.

23–24, 32 (citing authority for the statute of limitations as to all her claims except her Title VII claims).) As the report notes, a claim may be dismissed on limitation grounds "if all facts necessary to the affirmative defense clearly appear on the face of the complaint." (Dkt. No. 49 at 13.)

Critically, in her objections, Watson does not dispute that she failed to file timely a lawsuit as to most of her claims. Instead, she argues, as she did in submissions prior to the report, that she is entitled to "equitable tolling" for a number of reasons. For example, she complains that the EEOC delayed in investigating her allegations and issuing her right-to-sue notice, and that the delay was due in part to the defendants' alleged act of submitting false documents to the EEOC. She also alleges that she was suffering from "severe" health-related issues during the time-period, although she apparently remained capable both of communicating with the EEOC and maintaining a job during the same time-frame. (*See* Dkt. No. 50 at 6–12; Dkt. No. 44; Dkt. No. 28; Dkt. No. 3 at 6 (referring to her employment since her termination).)

The report considered and rejected Watson's argument that either equitable tolling or equitable estoppel saves her time-barred claims. The court agrees with and adopts the report's reasoning on this issue. (Dkt. No. 49 at 33–36.) In short, Watson has not pleaded any facts that show she is entitled to equitable tolling, nor has she alleged facts sufficient to show that defendants should be equitably estopped from enforcing any statute of limitations. (*Id*.)

The statute of limitations does not, however, bar claims that were properly raised in the charge of discrimination Watson filed with the EEOC. Any such claims are timely because she filed a timely charge of discrimination with the EEOC and, once the EEOC issued her a right-to-

9

sue notice, she filed within the 90-day period set forth in that notice.[6]

In Watson's charge of discrimination, she marked "disability" as one of the bases for her discrimination claim, in addition to marking the boxes for race, color, sex, and retaliation. (Dkt. No. 44-1 at 4.) She also referred to an alleged denial of FMLA leave. (*Id.*) Thus, the court addresses briefly whether either of these claims is deemed timely due to being referenced in some way in her EEOC charge.

First, as to her claim of disability discrimination, the court concludes that her EEOC charge did not include a claim of disability discrimination. In determining whether claims have been properly exhausted, the court looks to the contents of the EEOC charge. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit.") (citing *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). Specifically, "the scope of the civil action is confined . . . by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

Although Watson checked the "disability" box, nothing in the text of the charge itself suggests any claim of disability discrimination. *See Earl v. Norfolk State Univ.*, No. 2:13cv148, 2014 WL 2916718, at *13 (E.D. Va. June 26, 2014) (collecting authority for the proposition that merely checking a box on a charge form, but then leaving the form bereft of any allusion to allegations of such discrimination, is not sufficient to exhaust that claim). Accordingly, Watson failed to properly exhaust her administrative remedies as to any disability discrimination claim,

---

[6] Watson's EEOC charge properly raised claims of race discrimination, gender discrimination, and retaliation under Title VII. Thus, they are not time-barred, and the court will analyze defendants' motions to dismiss those claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See infra* at Section II.D.

and this court does not have jurisdiction over any such claim. *See Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."). It is subject to dismissal.

Turning next to Watson's FMLA claims, her charge references that she was involved in a car accident and sustained injuries in 2009, and that her employer "failed to offer [her] benefits under the Family Medical Leave Act policy." (Dkt. No. 44-1 at 4.) As the report notes, though, FMLA claims need not be raised in the EEOC charge. *Reed v. Md. Dep't of Human Res.*, No. ELH-12-0472, 2013 WL 489985, at *14 n.9 (D. Md. Feb. 7, 2013) ("[T]he Court is not aware of any requirement that a plaintiff must file an EEOC charge prior to instituting suit under the FMLA."); *see also Alexander v. Carolina Fire Control, Inc.*, No. 1:14cv74, 2014 WL 3729546, at *1 n.1 (M.D.N.C. July 25, 2014) (citing *Reed* and noting same).

It appears from documentation Watson submitted with her amended complaint that she eventually asked the Wage and Hour Division of the Department of Labor to investigate her claim of an FMLA violation by the University.[7] And while the filing of an EEOC charge effectively tolls the statute of limitations during the time-period when the EEOC is investigating and before it issues its right-to-sue notice, an FMLA investigation by the Wage and Hour Division does not have the same effect.

Indeed—and contrary to any claim that she believed the limitations period on this claim was tolled—Watson was specifically warned in a letter from the Wage and Hour Division that the statute of limitations on any FMLA claim would continue to run, despite the fact that she had

---

[7] The Secretary of Labor, not the EEOC, is tasked with investigating complaints of FMLA violations. 29 U.S.C. § 2617(b)(1).

11

filed a complaint and an investigation was ongoing. (Dkt. No. 44-1 at 10 (advising Watson that "the FMLA contains a statute of limitations"; that "[g]enerally . . . a lawsuit must be filed in a court of competent jurisdiction no later than two years from the date of an alleged FMLA violation, [or] three years in the case of willful violations," that "[o]nly filing a lawsuit in court stops the statute of limitations[,] and that "[f]iling a complaint with the Wage and Hour Division does not stop the running of the statute of limitations").) Thus, the mere fact that Watson included a FMLA claim in her EEOC charge does not render it timely.

For these reasons, the court will dismiss with prejudice all of Watson's claims as time-barred with the exception of her Title VII race discrimination, gender discrimination, and retaliation claims. In light of this ruling, it is unnecessary for the court to address the alternative grounds offered by the magistrate judge for dismissing these claims. As to some of them, though, Watson offers no objection, or the report correctly identifies other, valid grounds for dismissal. For example, although Watson states that she is objecting to the report's determination of her "14th Amendment/Due Process" claim (Dkt. No. 50 at 2), she offers no response at all to the report's well-reasoned conclusion that a § 1983 due process claim cannot be brought against a purely private actor, such as the University. (Dkt. No. 49 at 22.) Thus, her § 1983 claims also fail because the state action requirement of a Fourteenth Amendment violation and the state-action element of § 1983 are not satisfied. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct no matter how discriminatory or wrongful.") (internal quotation marks and citations omitted).

Nonetheless, in light of the court's conclusion that her other claims are time-barred, it is

12

unnecessary to address all of the other bases on which the report recommends dismissal of these claims. Thus, the court will reject as moot the portions of the report dealing with alternative bases for the dismissal of the remaining claims, with the exception of her § 1983 claim, already addressed in the above paragraph.

**D. Watson's race discrimination allegations sufficiently state a claim, but her allegations of gender discrimination and retaliation do not.**

After the dismissal of the individual defendants for lack of proper service, and the dismissal of the time-barred claims, the only claims that remain are Watson's Title VII claims against the University and its Board of Trustees.[8] The report recommends dismissal of Watson's Title VII claims under Rule 12(b)(6). The court will adopt the portion of the report that recommends dismissal of the gender claim for failure to state a claim, and the court will also dismiss Watson's Title VII retaliation claim;[9] but the court will reject that portion of the report that recommends dismissal of the race discrimination claim.

**1. Standard of review**

To survive a motion to dismiss for failure to state a claim, neither "a formulaic recitation of the elements of a cause of action," nor "naked assertions devoid of further factual enhancements" will suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal alterations, quotation marks, and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[8] Additionally, as noted *supra* in note 4, no individual liability exists under Title VII, so even if some of the defendants were properly served or service was waived, they should nonetheless be dismissed.

[9] The report does not address any retaliation claim under Title VII, although it treats Watson's complaint as raising FMLA and FLSA retaliation claims, a retaliatory discharge claim under state law, and a retaliation claim under the Fourteenth Amendment. (*See* Dkt. No. 49 at 20 22–24, 27–29.) The court will, however, construe the complaint broadly as stating a retaliation claim under Title VII.

13

for the misconduct alleged." *Id.* The factual allegations must "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

### 2. Watson has failed to sufficiently plead her gender discrimination claim, but she has adequately pleaded a claim of discrimination based on race.

Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's race [or] sex . . . ." 42 U.S.C. § 2000e-2(a). A Title VII plaintiff may prove a race or gender discrimination claim by either direct or circumstantial evidence. *See U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n.3 (1983). Watson does not allege any direct evidence of discrimination, and thus the elements of her prima facie Title VII discrimination claim must be established through the burden-shifting scheme established in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05 (1973).

Under the *McDonnell Douglas* framework, a plaintiff may establish a prima facie case of discriminatory termination by showing that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill v. Lockheed Logistics*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tx. Sw. Med. Ctr. v. Nasser*, 133 S. Ct. 2517 (2013). If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to set forth a legitimate, non-discriminatory reason for the termination. *Id.* If the employer does so, then the plaintiff may prevail only by establishing that the given reason is a mere pretext for discrimination. *Id.*

14

To survive a 12(b)(6) motion to dismiss, Watson need not plead facts that constitute a prima facie case, but the framework may nonetheless be used to inform the court's evaluation of her allegations. *Cf. Coleman,* 626 F.3d at 190 (citations omitted); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003) (noting that a plaintiff need not allege specific facts establishing a prima facie case of discrimination, but must still set forth "facts sufficient to allege each element of his claim"). That is, the complaint must allege "sufficient facts to show a plausible entitlement to relief." *See Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011). As applied here, then, Watson must allege facts raising a plausible claim that she was terminated because of her race or gender.

As discussed below, there are not a lot of factual allegations in the complaint that support either of Watson's discrimination claims, and the report properly notes that many of her allegations are conclusory and do not allege specific facts. For example, she refers to having to work with white people, to being the only person of color on her team, to the University being a "predominantly white institution," and to comments by others that they believe she is being discriminated against. These types of allegations do not lead to a reasonable inference of intentional discrimination. Instead, they constitute "naked assertions" largely "devoid of further factual enhancements." *Iqbal*, 556 U.S. at 678.

Notably, she does not allege any racially insensitive or offensive comments. She alleges that she was treated badly (primarily by her supervisor, Grigsby, who happens to be a white male) and that she believes his poor treatment of her is attributable to her race and gender. But she presents virtually no facts in support of that conclusory accusation. On her gender claim, her only allegation of disparate treatment is a conclusory statement that she was treated differently from two white male deans, who were not required to report daily to Grigsby's office or to give

15

him the same access to their calendars. There are no allegations, however, that those white males were similarly situated.[10] For the reasons set forth in the report, therefore, the court will grant the motion to dismiss the gender discrimination claim. (Dkt. No. 49 at 24–26.)

As to her race discrimination claim, however, Watson's amended complaint contains several additional factual allegations that allow her claim to rise above the purely speculative level. Specifically, she alleges that she was replaced by two white women, both of whom were unqualified for the job. She also alleges that, although Grigsby observed both her and Ms. Masiello (a white female), arguing in Ms. Masiello's office, only Watson was disciplined for it, and that Ms. Masiello was not. These facts, when coupled with her allegation that the reason given for her termination (her unauthorized absence from work on three consecutive days) was false—since she was physically present on the third of those days—are sufficient for her claim to survive a motion to dismiss.[11]

Based on the information presently before the court, it appears that Watson's race discrimination claim may not be able to survive a motion for summary judgment. But the case is before the court on a motion to dismiss, and the court must treat the allegations of Watson's amended complaint as true. Under this standard, the court will not dismiss her race discrimination claim.

---

[10] As Watson acknowledges, she had received negative evaluations and there were concerns about her attendance. Thus, while she claims that requiring her to report to Grigsby's secretary or keeping him advised of her whereabouts was not an "appropriate strategy for addressing performance issues" (Dkt. No. 28 at 6), she has not alleged that any other employee with similar performance difficulties was treated differently. Thus, no reasonable inference can be drawn that these requirements were imposed because of her race or gender.

[11] It appears that perhaps the University's position is not that she was wholly absent from campus on those specific days, but that she failed to report to her supervisor as directed on those days. Construing the facts in the light most favorable to Watson, however, the "falsity" of the stated reason for termination might be some evidence of pretext.

### 3. Watson's retaliation claim will be dismissed.

In addition to prohibiting discrimination on the basis of race or sex, Title VII also prohibits an employer from retaliating against an employee for complaining about prior discrimination or retaliation. 42 U.S.C. § 2000e-3(a). In the absence of direct or indirect evidence of retaliatory animus, a plaintiff may prove her case through the *McDonnell Douglas* burden-shifting framework. *Foster v. Univ. of Md-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). Under this framework, a plaintiff establishes a prima facie retaliation case by showing that: (1) she engaged in protected activity; (2) that her employer took adverse action against her; and (3) that a causal relationship existed between the protected activity and the adverse employment activity. *Foster*, 787 F.3d at 251. If the University could then show that it had a legitimate, non-discriminatory reason for the action, then Watson would have to show that retaliation was the but-for cause of the termination. *Id.*

To constitute protected oppositional activity, a plaintiff must engage in activity, such as "utilizing informal grievance procedures . . . staging informal protests, [or] voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). The plaintiff must also believe in the validity of her complaint and that belief must be reasonable. *Childress v. City of Richmond*, 907 F. Supp. 934, 940 (E.D. Va. 1995), *aff'd*, 134 F.3d 125 (4th Cir. 1998) (en banc).

Here, plaintiff has not alleged that she engaged in protected activity within the meaning of Title VII, nor has she alleged a causal relationship, and thus dismissal of her retaliation claim is appropriate. In documents attached to one of her filings, Watson identifies three incidents as allegedly retaliatory. (Dkt. No. 44-1 at 6–7.) Significantly, though, she does not identify any of the triggers for the allegedly "retaliatory actions" as being any complaint—informal or

17

otherwise—of discrimination. Instead, she claims that she was given a negative performance evaluation because she had "reprimanded a white employee for job performance and work attendance," and that she received a negative review because she had evaluated her supervisor harshly. (Dkt. No. 44-1 at 6.) Then, she claims that she had a conversation with her supervisor shortly before her termination in which he threatened her with the loss of her job, and she stated that she would file a grievance, but he continued to berate her. She does not allege, however, that in any of these actions that supposedly precipitated retaliation, she complained that she was being discriminated against based on her race or gender.

Watson states that she spoke to other university officials about how to best approach "the matter" of Grigsby's poor treatment of her, but she appears to admit that she never went to HR prior to October 20, 2010, which was when the last "retaliatory" action occurred, according to her. (*Id.* at 6–7.) In her amended complaint, she claims that she and other staff members had discussed "racism" at the University privately, and discussed that Grigsby engaged in "racist and sexist" behaviors. (Dkt. No. 28 at 10.) But she does not allege that Grigsby or any of the persons involved in the decision to terminate her were aware of these discussions. (Dkt. No. 28-1.) This is a clear failure to allege any causal relationship. For these reasons, the court will dismiss her Title VII retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the report will be adopted in part and rejected in part. The court will adopt the report's recommendation that service was improper as to all individual defendants, but reject it as to the University and its Board of Trustees. The court will also adopt the recommendation that all of plaintiff's claims—except for her Title VII claims—are time-barred, and that her § 1983 and Fourteenth Amendment claim are also subject to dismissal on the

18

grounds that she has failed to allege sufficient state action. The court will reject as moot the remaining recommendations setting forth additional grounds for dismissal of other claims.

As to her Title VII claims, the court will dismiss her gender discrimination and retaliation claims under Rule 12(b)(6), but will permit her race discrimination claim to go forward at this time.

An appropriate order will be entered.

Entered: September 24, 2015.

*Elizabeth K. Dillon*
United States District Judge